```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:
                                              CASE NO. 04-21316
RICHARD J. MONDORE,

                        Debtor.              DECISION & ORDER
_____

PATRICIA A. MONDORE,

                        Plaintiff,

        V.                                    AP #04-2124

RICHARD J. MONDORE,

                        Defendant.
_____

KENNETH W. GORDON, as Trustee,

                        Plaintiff,

        V.                                    AP #04-2130

RICHARD J. MONDORE,

                        Defendant.
_____
```

BACKGROUND

On April 1, 2004, Richard J. Mondore (the "Debtor") filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he resided at 5731 State Highway 357, Franklin, New York (the "Franklin Property"); (2) he was the joint owner of real property located at 4561 Ontario Street Ext.,

Canandaigua, New York ("Ontario Street"), consisting of a residence and a separate garage; (3) he owned household goods and furnishings (Schedule B, Item #4), which he valued at $500.00, and books and family pictures (Schedule B, Item #5), which he valued at $50.00; (4) he owned four pistols (two .22 caliber Rugers, one .38 caliber Ruger and one .357 caliber Smith & Wesson, currently in the possession of Patricia A. Mondore, his ex-wife("Mondore")) (Schedule B, Item #8), which he valued at $590.00; (5) he owned one hundred shares of the common stock of M&M Automotive Services, Inc. ("M&M") (Schedule B, Item #12), which he valued at $1.00; (6) there were no other liquidated debts owing to him (Schedule B, Item #17); (7) he was not the holder of any other contingent and unliquidated claims of any nature (Schedule B, Item #10); and (8) he owned mechanic's tools (Schedule B, Item #27), which he valued at $1,000.00.

The Debtor also indicated that: (1) he owed $5,091.31 to the National Bank of Geneva ("NBG") on a 1998 line of credit (the "NBG Obligation") that was secured by the mechanic's tools he listed on Schedule B, and M&M was a co-debtor on the NBG Obligation; (2) there was a pending divorce action between him and Mondore (the "Matrimonial Action"); (3) in response to Question #10 of his Statement of Financial Affairs, he had not transferred any property outside of the ordinary course of business within the year

preceding the filing of his petition; and (4) M&M operated as an automotive service station at the separate garage on Ontario Street.

Kenneth W. Gordon, Esq. was appointed as the Debtor's Chapter 7 Trustee (the "Trustee"). On May 11, 2004, the Trustee conducted an initial Section 341 Meeting of Creditors (the "Initial Meeting of Creditors") at which the Debtor and his attorney appeared, as did Mondore and her attorney.

On July 9, 2004, Mondore filed an Adversary Proceeding objecting to the discharge of the Debtor pursuant to Section 727 (the "Mondore Adversary Proceeding"). The Complaint in the Mondore Adversary Proceeding alleged that: (1) the Debtor did not disclose all of his assets on his Schedules and Statements, as admitted to by him at the Initial Meeting of Creditors, including items on attached lists used in connection with the trials and hearings conducted in the Matrimonial Action (the "Mondore List"); and (2) between March 23, 2004 and March 31, 2004, days prior to the filing of his petition, the Debtor removed truckloads of personal property from the M&M garage at Ontario Street.

On July 23, 2004, the Trustee filed an Adversary Proceeding objecting to the discharge of the Debtor pursuant to Section 727 (the "Trustee Adversary Proceeding"). The Complaint in the Trustee Adversary Proceeding alleged that the Debtor had: (1) concealed or

**Page 3**

permitted to be concealed property of the estate after the date of the filing of his petition; (2) refused to surrender non-exempt assets to the Trustee; (3) failed to disclose items of personal property owned by him at the time of the filing of his petition; (4) failed to provide information regarding his assets that had been requested by the Trustee, including a detailed inventory of all personal and corporate assets located at the Franklin Property; and (5) in connection with his bankruptcy, knowingly and fraudulently made a false oath by his failure to disclose all of his assets.

The Debtor interposed Answers to the Trustee and Mondore Adversary Proceedings which denied the allegations of the respective Complaints, and asserted as affirmative defenses that: (1) many of the assets on the Mondore List had been sold, junked or otherwise disposed of by the Debtor prior to the filing of his petition; (2) the Debtor had attempted to cooperate with the Trustee's requests for information by delivering various documents to his attorney, which were inadvertently placed in the Debtor's file and not forwarded to the Trustee; (3) a detailed appraisal of some of the assets of M&M, prepared by Dan Barden (the "Barden Appraisal"), showed a fair market value for those assets of $12,350.00 as of September 1, 2003, rather than their liquidation value; (4) many of the items on the Mondore List were not in the

Debtor's possession, but remained at the separate garage on Ontario Street; (5) the Mondore Adversary Proceeding, and to a certain extent the Trustee Adversary Proceeding, were continuations of the pending Matrimonial Action; and (6) Mondore had been running yard sales after the date of the Debtor's petition, selling items of personal property that had been located at the residence at Ontario Street.

The Court conducted a number of pretrial conferences in connection with the Adversary Proceedings, which primarily focused on: (1) whether certain items of personal property, owned either by the Debtor or M&M, were sold, junked or otherwise disposed of prior to the filing of the Debtor's petition; (2) an Oppenheimer stock fund, not disclosed by the Debtor on his Schedules or at the Initial Meeting of Creditors, resulting from reinvested dividends allegedly not posted to the Debtor's account at the time that NBG liquidated the account and applied the proceeds to the NBG Obligation, which had a balance of $246.00; (3) various other items of hunting and sporting equipment, including an additional pistol and various bows and cases, that were not disclosed by the Debtor on his Schedules or at the Initial Meeting of Creditors; and (4) the actual values of some of the personal property owned by the Debtor and/or M&M.

**Page 5**

On May 12, 2005, the Court conducted a trial (the "Trial") at which the Debtor was the primary witness.

## DISCUSSION

### I. CASE LAW

From the cases which have been decided under Section 727(a)(4)(A), including this Court's Decisions & Orders in *In re Pierri,* Ch. 7 Case No. 97-20461, A.P. Case No. 97-2125 (W.D.N.Y. April 21, 1998), *In re Ptasinski* (Chapter 7 Case No. 02-20524, A.P. Case No. 02-2172, W.D.N.Y., February 13, 2003), and *In re Foxton* (Chapter 7 Case No. 04-22377, A.P. Case No. 04-2154, W.D.N.Y. April 12, 2005), we know that for the Court to deny a debtor's discharge because of a false oath or account: (1) the false oath or account must have been knowingly and fraudulently made, *see Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994); (2) the required intent may be found by inference from all of the facts, *see 6 L.King, Collier on Bankruptcy*, ¶727.04[1][a] at 37 (15th ed. rev. 1996); (3) a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge, *see In re Diorio*, 407 F.2d 1330 (2d Cir. 1969); (4) a false statement resulting from ignorance

**Page 6**

or carelessness is not one that is knowing and fraudulent, *see Bank of Miami v. Espino (In re Espino),* 806 F.2d 1001 (11th Cir. 1986); (5) the required false oath or account must be material; and (6) the required false oath or account may be a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination at a creditor's meeting, *see In re Ball*, 84 B.R. 410 (Bankr. D.Md. 1988). Conversely, if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge.

## II. THE UNSCHEDULED ASSETS

After listening to and observing the witnesses at the Trial, particularly the Debtor, and reviewing the various exhibits admitted into evidence at the Trial and the pleadings and proceedings in the Trustee and Mondore Adversary Proceedings, the Court makes the following findings of fact and conclusions of law:

1. The Debtor knowingly and fraudulently made a false oath when he completed, signed and filed his Schedules and Statements, and testified at his Initial Meeting of Creditors, when he undervalued his stock in M&M at $1.00. At the time of the filing of his petition, as set forth in his Schedules, the Debtor knew that there was only approximately $5,100.00 due to

**Page 7**

NBG, M&M's secured creditor. At that time, he also knew that: (a) within several days of the filing of his petition he had removed the assets of M&M to the Franklin Property, valued on the Barden Appraisal at $12,350.00 as of September 1, 2003; (b) there were other valuable assets of M&M at the separate garage on Ontario Street (Plaintiff's Exhibit B), which his testimony at Trial indicated might have a value of as much as $16,000.00; and (c) there were lawnmower equipment assets of M&M (Plaintiff's Exhibit O) valued at $2,500.00 as of September 5, 2003. As the Judge in the Matrimonial Action expressed in his March 30, 2004 Findings (Exhibit A to the Mondore Adversary Proceeding Complaint), the value of M&M, which was no longer operating, was nothing more than the value of its assets, and the extent and value of those assets were among the most highly litigated issues in the Matrimonial Action.[1] As a result of the foregoing, and notwithstanding that the Debtor's attorney claims responsibility for valuing the M&M stock at $1.00 because of the negative equity shown on the corporation's financial statements and tax returns, there is no good faith explanation for why the Debtor, a businessman who had vigorously litigated these issues as a *pro se* litigant

---

[1] The Matrimonial Action was tried on ten (10) separate dates between August 8, 2003 and December 2, 2003. The Judge in the Matrimonial Action found these assets to have a value of $29,300.00.

>   in the Matrimonial Action, could have believed that the value of his stock in M&M, given the equity in the corporation's assets over and above the NBG obligation, was actually $1.00. Based upon the Debtor's Schedules and his testimony at his Initial Meeting of Creditors before Mondore and her attorney made an issue of the Debtor's valuation of his stock in M&M, the Trustee might never have discovered the true value of the assets of M&M or the Debtor's stock,[2] because the Debtor did not provide the Trustee with either a realistic value or a roadmap to their true value. This Court does not believe that te $1.00 value was a "plug number" used by the Debtor and his attorney in completing the Debtor's Schedules with the intention of going into greater detail concerning the value of the assets of M&M and the Debtor's stock at the Initial Meeting of Creditors. The tape of that Meeting played by the Trustee at Trial demonstrated that the Debtor had no such intention.

2.  The Debtor knowingly and fraudulently made a false oath when he completed, signed and filed his Schedules and Statements,

---

[2] Although the Court and the Office of the United States Trustee expect the Chapter 7 Panel Trustees to do as thorough an investigation of a debtor's assets as possible, and to follow up on any "clues" that might be presented in a debtor's schedules, that does not relieve a debtor from meeting his or her obligations under Section 521 to disclose all of their assets and to cooperate with the Trustee. For purposes of Section 727(a)(4)(A), a debtor cannot benefit from the diligence of a trustee.

Page 9

and testified at his Initial Meeting of Creditors, when he failed to disclose: (a) that he had an interest in valuable personal property, jointly owned with Mondore or individually owned by him, and still located at the residence on Ontario Street, which he had at all times claimed a one-half interest in during the Matrimonial Action; (b) various items of hunting and sporting equipment, including an additional .38 caliber Smith & Wesson pistol, a compound bow and a long bow; (c) a stove, refrigerator, oil furnace and portable GPS; and (d) an obligation of approximately $17,000.00 due from M&M.[3]

3. The Debtor's assertion at Trial that he was not obligated to schedule or disclose any interests that he might have in personal property located at the residence on Ontario Street, or to take into account the value of the assets of M&M still located at the separate garage on Ontario Street, because in both cases he was not in possession of them at the time of the filing of his petition, demonstrates that his failure to list or otherwise account for or disclose those assets was deliberate, especially in view of the very clear warning and explanation provided to him by the Trustee at his Initial

---

[3] This loan receivable also should have focused the Debtor on the fact that there was substantial equity in the assets of M&M over and above the NBG Obligation which could have repaid this loan in whole or in part.

Meeting of Creditors, as evidenced by the taped transcript at Trial, at which time the Trustee indicated that if he failed to disclose any assets on his Schedules or at the Meeting, it would jeopardize his bankruptcy discharge and may result in criminal prosecution.

4. The foregoing undisclosed and undervalued assets are material.

5. As the result of the foregoing findings of fact and conclusions of law, at this time the Court will not make further findings and conclusions regarding the Trustee's additional allegations that the Debtor: (a) failed to disclose various sales of assets within one year of the filing of his petition; (b) failed to disclose an Oppenheimer account; and (c) may have failed to disclose other assets which he claims to have sold, junked or otherwise disposed of prior to the filing of his petition, but in fact did not sell, junk or otherwise dispose of.

### III. OVERVIEW OF SECTION 727(a)(4)(A) ADVERSARY PROCEEDINGS

Although this Court has written a number of decisions denying the discharge of various debtors under Section 727(a)(4)(A), it has also disposed of many other adversary proceedings at the pretrial stage because they were not meritorious. In virtually all of the cases where the Court has denied a debtor's discharge pursuant to Section 727(a)(4)(A), it has been as the result of what Bankruptcy

Courts commonly refer to as the "ex factor," information about undisclosed assets obtained from ex-spouses, ex-business partners, ex-friends, ex-relatives and individual rather than institutional creditors who have information about the debtor's lifestyle or assets.

If there is an "ex" or a very aggressive, knowledgeable individual creditor in a debtor's history, attorneys for debtors would be well advised to take additional time with that debtor in preparing their Schedules and Statements in order to focus them, even more than usual, on the need to be absolutely thorough and forthcoming when completing, signing and filing their Schedules and Statements.

## CONCLUSION

The discharge of the Debtor, Richard J. Mondore, is hereby denied pursuant to Section 727(a)(4)(A).

**IT IS SO ORDERED.**

                              _____/s/_____
                              **HON. JOHN C. NINFO, II**
                              **CHIEF U.S. BANKRUPTCY JUDGE**

**Dated: June 14, 2005**